Davies, Ch. J.
At a Court of Oyer and Terminer, held in the county of Livingston, in the month of February, 1863, the plaintiff in error was convicted of the crime of murder in the first degree, and sentenced to be executed on the third day of April, then next ensuing.
The homicide was committed on the 18th day of November, 1861. On the 9 th day of March, 1863, a writ of error was brought upon said judgment to the Supreme Court, and at *217 a general term thereof, held on the 16th day of December, 1863, the judgment was affirmed; and on the 31st day of December, in the same year, the writ of error, upon this latter judgment, was brought to this court.
The cause was argued in this court at the January term thereof, held in 1865.
We then held, that the sentence passed upon the prisoner was clearly erroneous, and in conformity with the provision of the act of April 24th, 1863 (this court, upon that occasion, - being of the opinion that the conviction of the prisoner had been legal and regular), directed the record to be remitted by the Oyer and Terminer, to pass the sentence prescribed by the act of' 1860 (32 N. Y., 239). Upon this argument, no question was made that the trial and conviction of the prisoner l}ad not, in all respects, been legal and regular. Nay, this court understood the learned counsel for the prisoner to concede, upon that argument, that it had been.
At the September term of this court, held in 1865, an application was made, on behalf of the plaintiff in error, to this court, for a re-argument, on the ground that errors had intervened on the trial prejudicial to the prisoner, and which,-in the opinion of his counsel, were sufficient to procure a new trial,' and which had not been urged on the former argument, for the reason that it was supposed the point relied on was fatal to the conviction, and would, of itself, insure the discharge of the prisoner.
, Under the peculiar circumstances presented, this court ordered a re-argument; and the court have now heard all the suggestions of counsel, deemed important for the consideration of this court. We do not propose to review the questions discussed and decided upon the former argument. They are there carefully considered, and received the general approval of the members of the court. Those questions then passed upon must be regarded as finally settled, and not open to'further discussion. (Ratzky v. The People, 29 N. Y., 124). There remain to be considered the points now made by the counsel for the prisoner, on this re-argument, and urged as reasons why this conviction and judgment should be re- . versed.
*218 The homicide was perpetrated under circumstances evincing premeditation, and a determination, to take the life of the deceased. He was the brother-in-law of the prisoner, and had been at the prisoner’s house at an early hour of the evening of the homicide, and had sought admittance to the prisoner’s house, and had been refused. The deceased then went to the house of Mr. Meakly, the father-in-law of himself and the prisoner; and soon after his arrival there, the wife of the prisoner came to the same house, with her infant child. A short time afterwards, the prisoner was heard outside the house, calling upon the deceased to come out, which he did; and immediately the report of a gun was heard, and the persons in the house, going out, found the deceased had been shot, and was dead. The prisoner was there, and confessed he had shot him with his gun. Upon this state of facts, there would seem to be no question that human life had been taken, under circumstances which the law characterizes as murder in the first degree. No question was made but that the prisoner had taken the life of the deceased; and the defence of insanity interposed was fairly left to the jury, who, as the record states, “in a very few minutes returned to the court, and rendered a verdict finding the prisoner guilty of murder in the first degree.”
It is now urged, that it was error in the learned judge, at the trial, not to advise the jury that there was no sufficient evidence of premeditation to warrant a verdict of murder in the first degree. It is a sufficient answer to this objection to say that no such request was made at the trial, and, consequently, no refusal and exception.
The act of 1855 (Laws of 1855, ch. 337), as amended by that of 1858 (Laws of 1858, ch. 330), has no application to trials in courts of Oyer and Terminer. It is only when a conviction for a capital offence has taken place in the Court of General Sessions of the peace, in and for the city and county of New York, that this court is authorized to grant a new trial, “ whether any exception shall have been taken, or not, to the court below.”
But we think the law was correctly expounded to the jury. The Judge said: “ In order' to establish the guilt of the *219 prisoner, two things are necessary: First, a corrupt intent; and second, a vicious will; that the fact of the killing of Roger McWilliams, by the prisoner,, is not denied, and cannot be. The law presumes that a person taking the life of another, with a deadly weapon, intends to do it, and if a sane man so intends, it makes no difference whether he had a motive or not, for it is not necessary to look for a motive, when a person has been so killed with a deadly weapon, or with poison ; and, if a man under the influence of passion or intoxication commits a crime, the law holds him responsible for it, though done in the heat of passion; and it is a question for you to determine, whether the prisoner killed McWilliams with premeditation, or, whether he acted in the heat of passion without premeditation.” The authorities sustain the doctrine of this charge. (People v. Clark, 7 N. Y., 385; People v. Rogers, 18 N. Y, 9; Willis v. People, 32 N. Y., 715; Freeman v. People, 4 Den., 9.)
We see no error in permitting the whole conversation which occurred at the time of the'ltilling, in the presence and in the hearing of the prisoner, to be given in. evidence to the jury. The witness had asked the prisoner if at the time he was in a passion, and he replied that he was. The prisoner’s wife then manifestly in exculpation of the prisoner, and to account for his being in a passion according to his statement, said that the deceased had broken her windows, and she gave that as the cause of the difficulty, and she said it was done that evening. The evidence was clearly competent. It was a statement-made in the presence and hearing of the prisoner, and his silence must be taken as an acquiescence in its truth. It was important as tending to establish the anger and passion of the prisoner, and the motive operating upon him, in taking the life of the deceased.
It tended to rebut the testimony that the shot was accidental, and strengthened the position that it was designed and intentional. It was part of the res gestae, and everything which happened in the immediate presence and hearing of the prisoner, at the time of the homicide, was material, and therefore admissible, as tending to show his motive for the act. It was correctly said by Parker, Justice, in The People v. Greene, (1 Park. Cr. R., 17), that “ it was well settled that the maxim, *220 qui tacet consentiré videtur, was applicable to verbal conversations where there was a statement made in a party’s presence, which was not denied by him. In such case the party had an opportunity to deny the statement at once, and not doing so, there was good reason for supposing he could not controvert it.” The statement made by the prisoner’s wife in his presence, of what she had told him, was clearly admissible (Lewett v. Banning, 21 N. Y., 27).
Joseph Meably, the father-in-law of the prisoner, was called to prove various acts and declarations of the prisoner, tending to show that the prisoner was insane. On his cross-examination, he testified, that upon an occasion mentioned, the prisoner came to the witness’s house, and made threats of burning his house and shooting Ms man, if he, the witness, would not come out of the house. That the prisoner said: “ Come out you old coward, I am a little boy.” That th'o prisoner then kept still some time. The witness then remarked : “ A week or two before this he had threatened to burn Bailey’s barn. I told Ms. wife I would have him taken up.” On his re-direct examination the witness testified : “ Prisoner was not present when I had the conversation with Ms wife about' the burning of the barn and taking him up; he made no complaint of what I had said to Ms wife that night; he gave no reason why he was angry that night.” The prisoner’s counsel moved to strike out that part of the evidence relating to conversation between witness and prisoner; the court denied the motion, and the prisoner excepted. The evidence objected to consists in the statement of the witness, that, in a conversation he had with the prisoner’s wife, in reference to a threat of the prisoner to burn a barn, that he, the witness, would have him taken up. As it did not appear that tin's threatened action of the witness was ever communicated to the prisoner, or that he had any knowledge or intimation of it, it could never have had any influence upon anything the prisoner ever said or did.
It was wholly immaterial and irrelevant, and could not under any theory have worked any prejudice to the prisoner. From aught, that appears, he was in entire ignorance that any such threat had ever been made, and no act of his could therefore *221 have been based upon, or affected by it. The silence of the prisoner on this subject, leads to the inference that his wife had never mentioned the contemplated action of the father to him. The judge might properly have directed the striking out of this testimony, but it was no error for him to refuse to do so.
For the reasons already stated it was wholly immaterial.
The declaration and statements of the prisoner could not be given in evidence, on his own behalf, for any purpose whatever. They certainly could not be to enable the witness to identify the piisoner, and were therefore property excluded.
We see no error in what the learned judge said to the jury in reference to the testimony of Dr. Bennett. He said to them : “ If you find the prisoner, at the time Dr. Bennett was observing him through the hole in the wall, as described by the witnesses, was watching to see whether he was observed, and was regulating his conduct accordingly, it would raise a very strong presumption that the prisoner was feigning insanity, and indeed such evidence of design and calculation on his part, as to be in my opinion entirely fatal to his defence of insanity.”
A reference io Dr. Bennett’s testimony will show that the circumstances under which he watched the prisoner, were important to determine whether the insanity imputed to the prisoner was feigned or real. The doctor said he was looking through the hole, prepared so that he might observe the prisoner, and was looking through the hole, when the prisoner was put into the west side of the ja'l. As soon as the sheriff closed the doors, the prisoner warned through the hall, going through the same motions as he had been before; he then walked back towards the hole, and as he did so the witness noticed his eye directed towards the aperture; it could be seen from the inside; he did it two or three times; he came near the aperture, passed to one side, and stood still a moment, he then crossed directly n front of the aperture to the other side—he then appeared to bend forward, and looked into the hole, and dodged back.
The conduct of the prisoner as thus detailed, if he was watching to see whether he was observed, and was regulating his conduct accordingly, was most important for consideration of the. jury, on the issue whether the insanity claimed for the *222 prisoner was real or feigned. If the jury came to the conclusion that the prisoner was watching to see if he was observed, and believed that he was, then his conduct clearly evinced such evidence of calculation and design, as conclusively showed that he was not, at that time, at least, insane. It certainly tended strongly to show that the defence of insanity was not founded upon fact, and the expression of the opinion of the judge, that it was fatal to the defence' of insanity, is not a matter of exception. (Carver v. Jackson, 4 Pet., 1; Foster v. Steele, 5 Scott, 28; Belcher v. Prithe, 4 Moore & S., 295; Gardner v. Picket, 19 Wend., 136; Corn v. Child, 10 Pick., 252.)
We see no error in any of the rulings upon the trial, and if the appropriate sentence had been passed upon the prisoner, the judgment would be affirmed. But, for the reasons heretofore given in this case, we reverse the judgment of the Oyer and Terminer, and of the Supreme Court, and in obedience to the mandate of the legislature, we remit the record, to the end that the appropriate sentence upon the conviction may be passed.
The judgment of the Oyer and Terminer and of the Supreme Court, is accordingly reversed, and the conviction of the plaintiff in error, being in the opinion of this court legal and regular, is affirmed, and the record is remitted to the Oyer and Terminer of the county of Livingston, to the end that that court may sentence the prisoner to suffer death for the crime whereof he stands convicted, and that he be confined at hard labor in the State prison at Auburn, until such punishment of death shall be inflicted.
All the judges concurred, except Grover and Sorug-ham, who were absent.
Judgment reversed.