[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 567 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 568 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 571 
The voluntary declarations and admissions of one on trial for a criminal offence, that is, those not made under duress, or induced by menaces or promises, are always evidence against the party making them, and are more or less cogent as evidence of guilt, depending upon the circumstances under which they are made. The same principle gives effect to the action of the accused as evidence tending to prove or disprove his guilt. (Teachout v. People, 41 N.Y., 7; People v. Wentz,
37 id., 303; Commonwealth v. Cuffee, 108 Mass., 285; Same v.Crocker, id., 464.) When the conduct of the accused, either before or after being charged with the offence, is given in evidence, it is for the jury to draw the proper inferences and determine whether it is consistent with innocence, or is indicative of a guilty mind, proving more or less conclusively the commission by him of the particular offence charged. (Roscoe's Cr. Ev., 18; People v. Rathbun, 21 Wend., 509.)
Where an individual is charged with an offence, or declarations are made, in his presence and hearing, touching or affecting his guilt or innocence of an alleged crime, and he remains silent when it would be proper for him to speak, it is the province of a jury to interpret such silence, and determine whether his silence was, under the circumstances, excused or explained. At most, silence under such circumstances is but an implied acquiescence in the truth of the statements made by others, and thus presumptive evidence of guilt, and in some cases it may be slight, except as confirmed and coroborated by other circumstances. But it is some evidence, and therefore, except in those cases where the statements are made upon an occasion and under circumstances in which the individual sought to be affected could not with propriety speak, as in the progress of a judicial investigation, or in a discussion between third persons not addressed to or intended to affect the accused or induce any action in respect to him, so that for him to speak would be a manifest intrusion into a discourse to which he was not a party, the evidence is competent and should be admitted. *Page 572 
Any declaration of the individual in response to a statement so made would be admissible in evidence, and an omission to make any answer to it or to notice it, like other acts of the party, is to be interpreted, and such effect given to it as evidence, in connection with the other circumstances of the case, as the jury in their discretion shall think it entitled to. The implication of assent to a statement affecting the guilt or innocence of an individual, from an omission to controvert, qualify or explain it, arises from the fact that a person knowing the truth or falsity of a statement affecting his rights, made by another in his presence, will naturally, under circumstances calling for a reply, deny it, if he be at liberty to do so, if he do not intend to admit it. (Donnelly v. State, 2 Dutcher, N.J.R., 601.) It is no objection to the admission of the declarations of the accused, as evidence, that they are made while he is under arrest, and his admission, either express or implied, of the truth of a statement made by others under the same circumstances is equally admissible. His conduct and acts, as well when in custody as when at large, may be given in evidence against him, and their cogency as evidence will be determined by the jury. (People v. Wentz, supra; Hochrieter v. People, 2 Abbott's Court of Appeals Decisions, 363; McKee v. People,36 N.Y., 113; Teachout v. People; Commonwealth v. Cuffee, and Same
v. Crocker, supra.)
The case of the Commonwealth v. Kenney (12 Met., 235), was peculiar in its circumstances, and the opinion by the learned chief justice, speaking for the court, would seem not to be in harmony with the current of authority in this country or in England, or with the elementary writers. It is distinguishable from this case in this, that there was no direct evidence of the body of the offence, nor any evidence of the main fact; except as implied by the omission of the prisoner to deny the statement of the individual claiming to have been robbed, of the fact of the robbery and a description of the money lost. To make the evidence admissible as an implied admission of the fact stated, it had to be assumed *Page 573 
that the accused had personal knowledge of the facts stated; for he was only called upon to deny and could only deny statements of the truth or falsity of which he had personal knowledge. Here thecorpus delicti was proved by other evidence, and neither the declarations of the prosecution nor the admission of the prisoners, either express or implied, were relied upon for that purpose. The sole object and purpose of the evidence objected to was to identify the persons accused as the individuals committing the offence, and upon that question they were well qualified to speak and knew whether the statements of the prosecutor were true or false. The declarations and statements of the prosecutor, in the presence and hearing of Kelley and Ormsby at the second precinct station-house, with proof that the prisoners did not controvert them, were properly given in evidence. The persons named had been arrested upon hot pursuit immediately after the offence, without process, and taken to that place for safe custody, and the prosecutor was there to identify them and have them further detained if he should recognize them as among those concerned in the alleged larceny. He did identify them and charged them with participating in the robbery, stating the part each took in the commission of the offence; and it was not only proper for the prisoners to speak if the prosecutor was mistaken and they were innocent, but the circumstances were such as apparently to call for a denial. Although the statements were not addressed directly to them, they were the subjects of the conversation and parties to it, in this that they could with propriety and without a breach of decorum take part in it. They were for all practical purposes parties to the discussion. The declaration was in substance a challenge to them to assert their innocence if they were not guilty. The description of the money by the prosecutor was not a very material part of the transaction, but it was not incompetent. It was clearly not irrelevant, and, taken in connection with the fact that the description tallied with that of one parcel of money immediately thereafter found on the person of one *Page 574 
of the prisoners, who made a request that the two parcels found on him should be kept separate, as the other parcel was "bar money," making no reference to that which had been so well described by the prosecutor, or controverting his claim to it, gave it significance, and made it material as an implied acquiescence in the truth of the statement of the prosecutor that he had been robbed of that money by the prisoners and their associates.
It is true that the record does not show that the prosecutor gave evidence of any reply or omission to reply to the statements, but the counsel for the prisoners objected to evidence that the prisoners remained silent when the prosecutor described the money lost and declared that they were the persons who had taken it, and the objection was overruled and exception taken, and other witnesses present at the same interview supplied the omission and proved that they made no answer or statement except that referred to in respect to the two parcels of money, and a statement by both that the prosecutor was mistaken as to a third person whom he supposed was present at the larceny, they declaring he was not present. The correction of the mistake of the prosecutor, as to the presence of one of the individuals accused by him, gives significance to their silence as to their own presence at and participation in the robbery. The statements of the prosecutor were only in evidence as laying the foundation for and giving character and effect to the declarations, as well as the silence of the prisoners, and were not proved either as evidence of the facts stated or as corroborative of the testimony of the prosecutor-in-chief. All the circumstances necessary to render the evidence admissible, and give effect to the silence, as well as the declarations of the accused, were present.
1st. The statements and declarations of the prosecutor, identifying the prisoners, were pertinent and relevant to the occasion upon which they were made, and the offence to which they related, and the detention of the accused. They were part of theres gestæ. *Page 575 
2d. They were made in the presence and hearing of the parties interested, and whose rights were affected by them, and under circumstances which rendered a contradiction or explanation by the prisoners proper and reasonable, if they were not true.
3d. They were of matters, the truth of which was known to the accused,
4th. A reply by the prisoners would have been natural and proper if the statements were false.
The evidence of the remark of Mulhall, to the prisoner Clune, that Sullivan, one of the officers aiding in the arrest, was all right, or would make it all right, was objected to as incompetent and immaterial. There was prima facie evidence of a combination and confederacy between Mulhall, Clune and the others aiding in the commission of the offence, and any conversation between Clune and Mulhall, relating to the offence or the means of avoiding detection or evading punishment was competent as against either, and it was only proved as against Clune, Mulhall not being on trial. It was pertinent and relevant to the issue, and, therefore, it was not error to admit it, although it is believed it could not have affected the result of the trial. It was certainly not so material that it might not have been stricken out without essentially weakening the prosecution. As said by Judge COWEN, in People v. Rathbun (supra), of circustantial evidence, it is extremely difficult to establish a case of irrelevancy in the matter of the declarations and conduct of persons accused of crime, or of confederates in crime in the presence of each other. The acts and declarations of the person by whom the complainant was enticed from the steamboat and led to the saloon where the larceny was committed, were clearly competent as a part of the res gestæ There was abundant evidence to justify the conclusion that the parties were all acting with a common purpose and a common design, and although there may have been no previous combination or confederacy to commit this particular offence, the conduct and actions of the several parties, and the parts they severally *Page 576 
performed in the actual perpetration of the crime, was sufficient to make the acts and declarations of each, from the commencement to the consummation of the offence, evidence against the others.
A conspiracy may be proved, as other facts are proved, by circumstantial evidence, and parties performing disconnected overt acts, all contributing to the same result and the consummation of the same offence, may, by the circumstances and their general connection or otherwise, be satisfactorily shown to be conspirators and confederates in the commission of the offence. One party may allure the victim into the den, leaving it to others to effect the robbery, and all will be held equally guilty as confederates. Here the decoy remained with the victim until the larceny was committed, and his relation to and intimacy with the persons on trial were such as to authorize the jury to draw the conclusion that there was a conspiracy between all those present or taking any part in the transaction. The declarations were not given in evidence to prove the guilt of the parties on trial, and as the declarations of one conspirator against another, but as a part of the res gestæ, a part of the history of the transaction, and as such it was competent. The means adopted to entice the complainant from the steamboat were as much a part of the larcenous taking of the money, contributing as directly to the commission of the completed offence, as was the taking of the money by Ormsby. Both and all that intervened were parts of the one transaction, culminating in the robbery effected by all the means employed by the offenders, whether in the presence of each other or when separated.
There was no error in the admission of evidence of the direction of the complainant to the officer to arrest Mulhall, given in the presence of Clune. It could not have prejudiced the prisoners on trial, and was a part of the history of the pursuit and arrest of the offenders immediately after the commission of the offence, and may properly be regarded as a part of the resgestæ transpiring in the presence of the prisoners as against whom only it was proved. But *Page 577 
while it was not irrelevant, it is enough that by no possibility could it have prejudiced the prisoners or affected the result of the trial. Another answer might be found to the suggestion of error by reason of the admission of the evidence in the form of the objection and exception. The first question objected to was, "What did Reynolds say?" It having been proved that Clune was present and in hearing, and the evidence being offered against him, the question was competent and the objection properly overruled. The answer was, "There goes the other one," or "one of the parties," "the lawyer" pointing to Mulhall, and this was objected to as "not rebutting evidence," and on no other ground. If not strictly replicatory, although given in response to the evidence on the part of the defence, it was discretionary with the court to permit the prosecution to give evidence not strictly responsive, and an exception does not lie to the exercise of such discretion.
One Perry, drawn and appearing as a juror, was challenged by the prisoners, and on examination it appeared that at the time he was put on the jury list he was a freeholder owning a farm in Guilderland, for which he was assessed, but was not assessed for personal property. Before the trial he had sold his farm, taking back a mortgage for a part of the purchase-money, and at the time of the trial was not a freeholder and was not assessed for personal property. The challenge of the prisoners was withdrawn, but renewed by the prosecution and the juror discharged. The qualifications of jurors are prescribed in the directions to the town officers whose duty it is to select them and prepare the lists from which the ballots are prepared for the drawing of jurors. (2 R.S., 411, § 13.) The direction is to take such only as, possessing the other qualifications, are at the time assessed for personal property belonging to them in their own right to the amount of $250, or who shall have a freehold estate in real property in the county belonging to them in their own right, or in the right of their wives, to the value of $150. The juror was not qualified, and could not at the time of the trial, *Page 578 
have been selected as a juror by the town officers, or been placed on the list of jurors. A subsequent section of the same statute (§ 33) makes it imperative upon the court to discharge any person from serving on a jury, when it shall appear that he is not at the time the owner of the freehold estate or real property prescribed by the statute, "and is not the owner of personal property to the value of $250;" and it is claimed, on behalf of the plaintiffs in error, that, it not appearing that the juror did not own personal property to the amount named, it was error to allow the challenge of the prosecution. But this section was not designed to regulate or affect the challenges, but to give the right to the juror to be discharged on his own motion. The property qualification of the juror, so far as it depends upon the ownership of personalty, must appear and be evidenced by the assessment roll, and suitors are entitled to the benefit of the challenge if this is wanting. When a juror applies in his own behalf to be discharged from the performance of his public duty, the legislature might well require him to prove, not only that he was not assessed for personal property, but that he ought not to be. But the general qualification of jurors, and the rights of those who may challenge such qualifications are not affected by this provision. The right of challenge for want of proper qualifications is a strictly legal right, and must be determined by the statute prescribing the qualifications. (3 Bl. Comm., 362.) As an application for a discharge under section 33, it would not have been a part of the trial, but addressed by the juror to the discretion of the court and not the subject of review. There was no error in disposing of the challenge and holding that the property qualification when questioned by a challenge must be that required to authorize the original selection of the individual as a juror.
The judgment must be affirmed.
All concur.
Judgment affirmed. *Page 579