THE PEOPLE OF THE STATE OF NEW YORK, DEFEND-ANT IN ERROR, v. ANSON GORHAM, PLAINTIFF IN ERROR.

*Declarations of conspirator — when admissible, as against his co-conspirators.*

In order to render the declarations and acts of one conspirator admissible as against his co-conspirators, they must have been made while the conspiracy was pending, and in furtherance of the common design.

WRIT OF ERROR to the Court of Oyer and Terminer of Chenango county, to review the conviction and sentence of the plaintiff in error of burglary.

*Henry M. Tefft* and *Issac S. Newton*, for the plaintiff in error.

*John W. Church* (district attorney) and *George W. Ray*, for the people.

LEARNED, P. J.:

The prisoner, jointly with Warriner and Bowdish, was indicted for burglary in entering the stable of Shattuck and stealing a horse-brush, on the night of June fifteenth or sixteenth.  He was tried separately.  On the trial, Warriner, an alleged accomplice, was the principal witness for the people.  His testimony tended to show that, on the afternoon of the sixteenth, he and Bowdish, with the prisoner's consent, agreed to commit some robbery; and,

if they had no success, to return to Guilford, where Gorham was to be, and probably to do some similar crime there. He further testified that the prisoner and Bowdish, in pursuance of this arrangement, started together and before him that evening; that he followed; that, at a certain point near Shattuck's, he saw the prisoner's horse in the road; that he stopped and went towards Shattuck's barn; that a stranger came driving along the road and ran into the prisoner's wagon and upset; that this resulted in a scuffle, in which Warriner was struck on the head and the stranger stabbed in the hand; that he returned to his house, and the prisoner and Bowdish came there ten minutes after and said they had been in Shattuck's barn; and that he and the prisoner and Bowdish then began to conceal property which was in Warriner's house. The witnesses further gave testimony tending to show subsequent acts on the next day, and afterwards, of himself, the prisoner and Bowdish, for the purpose of concealing the crime. There is other evidence tending to show that the horse-brush was taken that night from the barn.

The prisoner denies all of this testimony. The principal question on this appeal is as to the admission of the testimony of Fanny Wood. She testified, under objection by the prisoner, that, on the night in question, Warriner came to her house and asked her to stay at home; that she did not say much about it, and asked where he was going; that he told her he was going to Smithville Flatts with Bowdish, using language which implied that their purpose was robbery; neither the prisoner nor Bowdish were present.

Again, she testified under like objection, that on that same night, between two and four A. M., Warriner came to her house; and she asked him what made him so bloody; he said he was hurt, and asked her to get water to wash his head; she did so, and asked him where the injury occurred; he answered, " down below here," and said that the prisoner and Bowdish were with him. Neither of them were present. The prisoner's counsel asked the court to charge that the jury should not take Fanny Wood's testimony into consideration, as to where they were going that night. The court declined. The court spoke of her as a corroborating witness, and left the question of her credibility to the jury, to which

the prisoner excepted. It appears, therefore, that the testimony of Fanny Wood was considered by the court as important, and such as the jury should regard.

The counsel for the people insists that the evidence was proper, first, on the ground that Fanny Wood was a confederate in the conspiracy. I do not see that this is proved as a matter of fact. There is nothing to show that the request to stay at home was consented to; nothing to show that if it had been consented to, it would have had anything to do with the plan for robbing. It was not proposed that the goods should be brought to her house. The relations between her and Warriner explain the request that she should stay at home. She told him that, if he went with Bowdish, she hoped he would be caught.

I find no evidence in the case showing that she was a confederate. Again, it is insisted that this evidence was admissible, on the ground that Warriner, the prisoner, and Bowdish were confederates and conspirators. The prisoner's counsel urges, on the other hand, that there is no evidence of a conspiracy to commit the act for which the prisoner is indicted, and that all of which there is any evidence is of a conspiracy to commit another crime, which was afterwards abandoned. And further, even if the proof of conspiracy pointed to this very crime, the prisoner's counsel insists that the evidence was not admissible. "The evidence of what is said or done by the other conspirators must be limited to their acts and declarations made and done while the conspiracy was pending, and in furtherance of their design; what was said or done by them before or afterwards not being within the principle of admissibility." (3 Greenl. Ev., § 94.) Mr. Greenleaf properly says that this is the same principle of identity that governs in regard to the acts and admissions of agents when offered in evidence against their principal. And the rule in the case of agents, is that the declarations must constitute part of a transaction in which the agent represents his principal. It must characterize the act of the agent. (*White* v. *Miller*, 71 N. Y., 118.)

Now there is nothing to show that the statement made by Warriner to Fanny Wood in the evening, was made in furtherance of the design. It was a mere statement of his own intention to commit a crime with Bowdish. And so after the alleged crime

had been committed, and Warriner had come to Fanny Wood to have his head washed, his statements to her then made were, in no way, a part of the *res gestæ.* The enterprise had been accomplished or abandoned, whichever view is taken of the conspiracy. And Warriner's subsequent acts or admissions were not evidence against the prisoner. (1 Whart. Crim. Law, § 703.) The important part of his statement was that the prisoner and Bowdish were with him when he was injured. That was a mere unsworn statement made after the crime had been committed, and was in no way a part of the transaction. It will be seen that Warriner testifies that, after the affray, the prisoner and Bowdish had come to his house, and had gone away again to their own house to put away some goods (supposed to have been stolen). And it was after that time that Warriner went to Fanny Wood's and made the admissions testified to. So the alleged crime of burglary and of stealing the horse-brush had been fully completed. The horse-brush lay on the road near Shattuck's. It was not at the prisoner's house.

The counsel for the people urge that the evidence was admissible, because on some subsequent days, as is claimed, the conspirators were trying to conceal the crime. But the difficulty is that this statement of Warriner's was no part of the committing or of the concealing the crime. (*People* v. *Davis,* 56 N. Y., 102; *Kelley* v. *People,* 55 N. Y., 565.)

As Warriner had already testified to the fact that the prisoner was present at Shattuck's, the proof of his unsworn statement to the same effect would probably not have been of much consequence, if it had not been made important by the charge. The learned judge spoke of Fanny Wood as a corroborating witness, and at the request of the counsel for the people charged that where an accomplice is corroborated as to material points, his evidence becomes entitled to consideration and weight with the jury. It is evident, therefore, that the evidence of Fanny Wood was intended as a corroboration of the accomplice Warriner. But proof of these statements of Warriner were no corroboration of his testimony.

" The corroboration of an accomplice ought to be as to some fact or facts, the truth or falsehood of which go to prove or disprove the

offense charged against the prisoner." Cited in *People* v. *Haynes* (55 Barb., 450), where the principles applicable to this subject are very well stated. That Warriner stated, not under oath, that the prisoner committed the crime did not tend to prove or disprove the offense.

Being of the opinion, then, that this evidence of Warriner's statements was inadmissible and prejudiced the prisoner, without examining the other questions presented, we think that the judgment and conviction must be reversed, and the cause remanded to the Court of Sessions for a new trial.

BOCKES, J., dissented.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment and conviction reversed and new trial granted; case remitted to Sessions.