FREDERICK GEIGER v. STATE OF OHIO.

1. OFFER OF POLICE JUDGE TO HELP PRISONER NOT PREJUDICIAL IF CONFESSION IS NOT INDUCED THEREBY.

An offer of help made by a police judge to a prisoner under arrest for murder, together with a promise to do everything he could for him, is an inducement to make a confession, but is not prejudicial if the statement made is not produced thereby.

2. STATEMENT BY CHILD IMPUTING CRIME TO FATHER, MADE IN HIS PRESENCE, ADMISSIBLE TO SHOW HIS ACQUIESCENCE THEREIN.

A statement made by a child four years of age in the presence of his father and a chief of police, tending to inculpate his father in the murder of his mother, is admissible for the purpose of showing that the prisoner acquiesced in the statement by remaining silent.

3. DENIAL OF RIGHT TO CONFER WITH COUNSEL WILL BE REVIEWED ONLY, WHEN.

A refusal to permit a prisoner to confer with counsel, at a time when police officers were endeavoring to secure a confession from him, is not a matter which a reviewing court will consider, unless it distinctly appears in the record that in consequence of ill treatment by the police he was dazed, confused or unconscious, and therefore unable to understand the questions put to him.

4. ACT 96 O. L. 3 CONFERS POWERS OF ADMINISTRATIVE CHARACTER AND IS CONSTITUTIONAL.

The act of September 30, 1902 (96 O. L. 3), providing for the appointment of jury commissioners, confers power of an administrative character, and is not judicial within the meaning of Sec. 1, Art. 4 of the constitution; nor is it unconstitutional because it provides that only judicious freehold electors shall be appointed commissioners.

5. IRREGULARITIES IN SELECTING GRAND JURORS CANNOT BE PLEADED IN ABATEMENT.

Mere irregularities in the selection of grand jurors must be taken advantage of, if at all, by challenge for cause, and cannot be pleaded in abatement.

6. "J. P. CLARK" INSTEAD "JOHN P. CLARK," FOREMAN OF GRAND JURY, NOT FATAL VARIANCE.

It is not fatal to an indictment that the foreman signed it J. P. Clark, instead of John P. Clark, the name appearing on the venire, for the court appointing the foreman is presumed to know his identity.

ERROR to the court of common pleas of Hamilton county.

**Shay & Cogan,** for plaintiff in error.

**Hoffheimer, Morris & Sawyer,** prosecuting attorneys, for defendant in error.

GIFFEN, J.

Under an indictment charging the plaintiff in error with murder in the first degree, he was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary of the state of Ohio at hard labor during his natural life.

The chief ground of error alleged is the admission in evidence of certain declarations or admissions made by the prisoner after his arrest in the presence of police officers having him in custody; the one being a declaration made in response to questions put to him by William H. Lueders, judge of the police court, the other being an admission or acquiescence by silence in a charge made by his infant son, Stephen Geiger, in the presence of James Casey, inspector of police.

In the first instance, Judge Lueders made the following statement:

"I said to him that if I could do anything for him or help him or relieve his mind in any way that I should be glad to do so, and then he said he would see me in the morning, or I said I would see him in the morning.

"Q. (By Counsel.) You said to him if you could do anything for him you would be glad to do so?

"A. Yes, sir.

"Q. That you would do all in your power for him to ease his mind?

"A. Yes, sir.

"Q. And anything you could do for him you would?

"A. I did.

"Q. He knew at that time you were a judge?

"A. He certainly did."

The next morning the following occurred:

"I said, 'good morning.' I asked him if he had anything to say. He said, my wife is dead, I have nothing to fear, I have nothing to say."

An offer of help to a prisoner under such circumstances made by a judge of the police court would ordinarily inspire hope in the mind of a prisoner and induce him to make a statement concerning the crime for which he was held; but while it was calculated to induce such statement, it appears that the prisoner in this case was not so induced. In the first place, when the offer of assistance was made, nothing was said by the prisoner other than that he would see the witness in the morning, and no reference was made to the conversation of the first day when they met on the following morning. It is, therefore, less probable that what he did say on that morning was induced by the tender of assistance made by Judge Lueders.

In the second place the statement itself shows that the prisoner was not induced to make it by reason of the offer of help, but rather that it was in answer to the question *whether he had anything to say,* and the answer given is equivalent to saying, *I have nothing to say, because my wife being dead, I have nothing to fear.*

The statement made by the witness, Judge Lueders, to the prisoner contains no suggestion of a threat, but rather of hope that the prisoner through him might obtain help. In the case of Spears v. State, 2 Ohio St. 583, 584, the syllabus contains the following propositions:

"No confession can be received in evidence in a criminal case unless it was voluntary.

"A confession induced by hope or fear, excited in the mind of the prisoner by the representations or threats of any one, is not to be considered as voluntary.

"The question in every case, where a confession has followed representations or threats, is, was it produced by them?"

Applying the principles announced in this case to the facts before us, we are constrained to hold that while inducements were not wanting, the statement made by the prisoner was not produced by them, but on the contrary was voluntary.

The other alleged error involving an admission of the prisoner, occurred while James Casey, inspector of police, was on the witness stand, and the question was asked by the prosecuting attorney, as follows:

" ' I will ask you to state what the boy said.'

" (Objected to by counsel for defendant.)

"Mr. Shay:   'I now ask that I be permitted to examine the witness on his *voir dire.'*

" (Motion overruled, and counsel for defendant excepted.)

"Mr. Shay:   'I object to its competency.'

" (Objection overruled, and counsel for defendant excepted.)

"Mr. Shay: 'I expect to prove upon my cross-examination, if permitted sò to do, of this witness that the child was of delicate years, only four years of age, and that he had said that the declaration that he made to the police, in which he said that his father hurt his mother on that night, was instilled into him by his uncle on the night after they left the house where his mother was dead; that he was asleep and did not see it, and did not know anything of it or concerning it; that the child is but four years of age, and does not understand the nature of an oath and would be incompetent as a witness in this case; that the defendant was incarcerated in the jail on York street at about twelve o'clock on Thursday night, after the alleged death of his wife; that he was kept up by a constant jabbing and relay of police officers that night and not permitted to sleep, and brought out two or three different times before the police officers and the witness upon the stand, James Casey, who was at that time acting as superintendent of police, against his will, and that he objected to being brought before the said chief of police; that he demanded the right and privilege of seeing counsel, which was refused him; that his counsel, Messrs. Shay & Cogan, called at the office of Mr. James Casey to see the prisoner, and they were refused admission to him, and that this inquisitorial proceeding was had in this manner, against the wish of the defendant and against the wish of his counsel, and his counsel excluded from being present, and that it was no voluntary appearance upon his part, all of which this defendant will be able to show if permitted so to do.' "

Clearly the court was in error in overruling the motion of counsel for defendant for permission to examine the witness when he was about to relate the statement made by the boy, Stephen Geiger, in the presence of his father, the prisoner, charging him with assaulting his wife, the deceased, with a pair of scissors, but it does not follow that the error was prejudicial, unless the facts which counsel for the defendant offered to prove when he asked for permission to cross-examine the witness make it so. In the case of Rufer v. State, 25 Ohio St. 464, the third proposition of the syllabus is as follows:

"Where, on a criminal trial, a witness is offered by the state to prove a confession made by the defendant, to the admission of which testimony the defendant objects, on the ground that the confession was not voluntary, it is the right of the defendant to inquire of the witness and prove his objection before the confession is given in evidence; it is error for the court, in such case, to refuse him leave to make such

examination until after the examination in chief has been concluded and the confession given to the jury.

"4th. A judgment in such case, however, will not be reversed for refusing the defendant leave to show, by preliminary proof, that the confession was obtained by improper inducements, unless the facts constituting the alleged inducements, as proposed to be proved, be set out in the record."

The first set of facts offered to be proven by counsel in this case related to the competency of the child as a witness; but the statement of the child was not offered as substantive proof of the crime charged, but only to show that the prisoner, in whose presence it was made, acquiesced by his silence. It has been held in the case of Richards v. State, 82 Wis. 172 [51 N. W. Rep. 652], in the fourth proposition of the syllabus that—

"Inculpatory statements, made in the presence and hearing of one accused of crime, which he, having opportunity to do so, does not deny, and the truth or falsity of which is within his personal knowledge, are admissions of the accused by acquiescence, and as such admissible in evidence, although such statements were made by a person not competent to testify in the case."

Another set of facts, among those offered to be proven, relate to the truth of the statement made by the boy. But whether true or false, is one of the vital questions involved, and if false called all the more for a response by the prisoner. Other facts relate to his imprisonment or alleged barbarous and inhuman treatment by the police officers having him in charge, but there is no statement that the prisoner, by reason of the loss of sleep, or otherwise, was unable to understand or did not hear the statement made by the boy. In support of the objection to the admission of a statement made in the presence of the prisoner under such circumstances, counsel has cited the case of Bram v. United States, 168 U. S. 532 [18 Sup. Ct. Rep. 183]. The facts in that case are, however, different from those in this case, in that the prisoner there made a statement in response to the questions of the police officer, and the court held that such statement was not a *voluntary confession*. But in the opinion, page 563, it is said:

"Indeed, the implication of guilt resulting from silence has been considered by some state courts of last resort, in decided cases, to which we have already made reference, as so cogent that they have held that where a person is accused of guilt, under circumstances which call upon him to make denial, the fact of his silence is competent

evidence as tending to establish guilt. Whilst it must not be considered that by referring to these authorities we approve them."

The argument in that case proceeds upon the theory that the prisoner is protected by a constitutional provision that no person shall be compelled in any criminal case to be a witness against himself, and that while under arrest and questioned by a police officer he would be impelled to speak either for fear that his failure to make answer would be considered against him, or of hope that if he did reply, he would be benefited thereby. It is difficult to see why the admission of such statements is not an evasion of this constitutional provision intended for the protection of the prisoner. But, however strong the reasoning of the court in that case may be, the question is not an open one in this state, as the Supreme Court has held in the case of Murphy v. State, 36 Ohio St. 628, as follows:

"Where two persons charged with larceny, having the stolen property in their possession, were taken into custody by a police officer, the declarations of one them, assuming to speak for and implicating both, made to the officer in the presence and hearing of the other person charged, who remained silent, are competent evidence for the state on a separate trial of the latter"—relying upon Kelley v. People, 55 N. Y. 565, of which the syllabus is as follows:

"Upon a criminal trial, evidence that the accused, when charged with the offense, or when declarations touching his guilt were made in his presence and hearing, remained silent when it would have been proper for him to have spoken, is competent, and it is no objection to the admission of the evidence that the accused was, at the time, under arrest."

Although the case of Bram v. United States, *supra,* and other cases in many other states held that such testimony is inadmissible, we are, of course, bound by the decision of our own Supreme Court. We do not wish to be understood, however, as approving the alleged ill treatment of the prisoner by the police. The zeal of the police officers in the discovery and punishment of criminals as manifested by fair and honorable means, is worthy of the highest praise, but when accompanied by torture and persistent and unfair efforts to entrap the prisoner and manufacture testimony against him, not only impedes and tends to defeat justice, but deserves the condemnation of all good citizens.

Other facts, which defendant through his counsel offered to prove, were his demand for counsel and the request of Messrs. Shay & Cogan to see the prisoner. It does not appear for what purpose he wished counsel at that time, nor that he was in need of advice from any source

except as it may be inferred from the alleged ill treatment accorded him by the police. If he were dazed, confused or unconscious by reason of such treatment, and therefore unable to understand the questions put to him, such facts should distinctly appear in the record, and not be left to mere inference.

We are of opinion, therefore, that the court did not err prejudicially in receiving in evidence the statement of the boy, Stephen Geiger, and the fact that the prisoner said nothing in reply.

Many other errors are assigned, but the following only are relied upon: The objection that the act of September 30, 1902 (96 O. L. 3: Sec. 5163 Rev. Stat. et seq.), to provide for the appointment of jury commissioners is unconstitutional and void in that it seeks to confer judicial powers, is without merit. Although the power conferred requires the exercise of judgment, it is administrative in character, and not judicial within the meaning of Sec. 1, Art. 4 of the constitution. Nor is it unconstitutional because it provides that only judicious freehold electors shall be appointed as jury commissioners. It has uniform operation throughout the state, and affects alike all the members of the class designated.

The objection to the manner of selecting and drawing certain grand jurors is also without merit. Mere irregularities must be taken advantage of, if at all, by challenge for cause, and cannot be so pleaded in abatement. Huling v. State, 17 Ohio St. 583.

It is further claimed that the indictment is not signed by the foreman of the grand jury, John P. Clark, but by J. P. Clark, and therefore is not a true bill. This variance is not fatal, for the court appointing the foreman is presumed to know his identity. Whiting v. State, 48 Ohio St. 220 [27 N. E. Rep. 96].

We find no prejudicial error in the record, and the judgment will be affirmed.