## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### April, 1920.

### THE PEOPLE v. LUIGI CASCIA.

#### (191 App. Div. 375.)

(1) ROBBERY, LARCENY AND ASSAULT—EVIDENCE TO JUSTIFY CONVICTION—CORROBORATION OF WITNESS UNDER TWELVE YEARS OF AGE WHO WAS NOT SWORN.

Where a defendant charged with robbery, larceny and assault was identified as one participating in the crime by an infant under twelve

years of age who was not sworn, the testimony is sufficiently supported by other evidence to meet the requirements of section 392 of the Code of Criminal Procedure where it appears that the defendant, who was panting as if he had been running, was arrested near a point to which the robbers had been chased by the persons who had been robbed and at that point had thrown away a revolver, such weapon having been used in the accomplishment of the crime, it also appearing that the infant testified that the defendant had a black band on his arm while the officer making the arrest gave similar testimony.

(2) SAME—SILENCE OF DEFENDANT WHEN CHARGED WITH CRIME AFTER ARREST.

On the prosecution for such crime evidence that the defendant maintained silence when charged with the crime after his arrest is not error as the fact that the defendant is under arrest affects the weight and not the competency of the evidence.

(3) SAME—REFUSAL OF PERSON ROBBED TO IDENTIFY DEFENDANT.

Where the district attorney, knowing before trial that the persons who had been robbed would refuse to identify the defendant as one of the robbers, placed one of said persons on the stand and merely proved by her the commission of the crime, it was error for the district attorney, after the defendant's counsel declined to cross-examine the witness, to cross-examine her himself as to previous statements, thereby placing before the jury the fact that immediately after the robbery the witness had identified the defendant as one of the robbers and that she had sworn to it in the Magistrate's Court; but as no objection and exception was taken to the evidence there was no error of law committed which requires the reversal of a judgment of conviction.

However, where the defendant had already been identified by the officer who arrested him the error aforesaid was harmless.

(4) SAME—ERROR OF DISTRICT ATTORNEY IN CROSS-EXAMINING HIS OWN WITNESS.

As the evidence is amply sufficient to sustain the conviction the fact that the district attorney, when cross-examining his own witness, made use of the affidavit which she made before the committing magistrate may be disregarded.

JENKS, P. J., dissents, with opinion.

APPEAL by the defendant, Luigi Cascia, from a judgment of the County Court of Kings county, rendered against him on the 20th day of February, 1919, convicting him of the crimes of robbery in the first degree, grand larceny in the second degree and assault in the second degree, and sentencing him to not more than ten years and six months and not less than five

years in State's prison, and also from an order of said court denying defendant's motion for a new trial made upon the minutes.

*David F. Price* (*Abraham H. Kesselman* with him on the brief), for the appellant.

*Harry G. Anderson, Assistant District Attorney* (*Harry E. Lewis, District Attorney,* with him on the brief), for the respondent.

BLACKMAR, J.:

About 8 o'clock on the evening of Sunday, the 24th of November, 1918, three men entered a little grocery store at No. 100 Harrison street, Brooklyn, kept by Pasquale Della Mura and Lucia, his wife, and at the point of a revolver took $150 from the money drawer. This robbery was conclusively proved and is not controverted. The serious question litigated was whether the defendant was concerned in it.

One peculiarity of the case is that Pasquale and Lucia Della Mura deny that the defendant was one of the robbers. Obviously the district attorney knew, when he brought the case on for trial, that such would be their testimony; nevertheless, as he was compelled to prove the robbery, he was forced to call either Pasquale or Lucia, and he chose Lucia. He proved by her simply the fact of the robbery and turned her over for cross-examination. Nothing was said by her about the identity of the defendant except that she voluntarily stated that she did not know the men who robbed her.

An important episode of the trial took place at this point, but I will pass it over for the present.

The district attorney then placed upon the stand a lad of about eleven years of age, a son of the Della Muras, who was present at the time of the robbery. The judge examined this boy to ascertain his understanding of the nature of an oath,

and declined to swear him. His testimony was, however, received under section 392 of the Code of Criminal Procedure. An important result flowing from this is that the defendant cannot be convicted upon the testimony so given " unsupported by other evidence."

The lad testified to the robbery and identified the defendant. A police officer, James Guerin, was then called. Guerin testified that while he was standing in Columbia street, which was three or four city blocks from the place of the robbery, he saw in front of him a man who was panting as if he had been running. The man, watched by Guerin, put something down on a cellar door. Guerin followed him, found that the article was a revolver, and arrested him. That man was the defendant. He was taken by Guerin back to 100 Harrison street, where the robbery was committed. Guerin testified that in defendant's presence he asked both Pasquale and Lucia Della Mura if defendant was one of the robbers; that both answered yes, and that defendant made no reply. This was practically the People's case. The defense presented an alibi supported by the testimony of six witnesses, among whom was Pasquale Della Mura, who testified that when the robbers, of whom the defendant was not one, left his store, he followed them in his shirt sleeves; that they ran from Harrison street to Tiffany Place, through Tiffany Place to Degraw street, through Degraw street towards Columbia street, and that there he lost them. It was near this point that Guerin arrested the defendant, and Guerin testified that he saw a man in his shirt sleeves at the corner of Degraw and Columbia streets.

It is urged that the testimony of the boy was not supported by other evidence. Defendant, panting as if he had been running, was arrested near the point to which Della Mura had chased the robbers. He tried to get rid of the incriminating evidence of a revolver. The boy testified that the defendant had a black band on his arm, and a detective, McCarthy, testified that the defendant had a mourning band on his arm.

The silence of the defendant, in face of the accusation by Pasquale and Lucia Della Mura, is, if competent, which will be considered later, supporting evidence.     We think, therefore, that the testimony of the boy was supported by other evidence and that the question of identity was one of fact for the jury.

The defendant claims that evidence of his silence in the face of the charge against him is not admissible, because he was then under arrest.     It has been said by the Court of Appeals that evidence of this character is dangerous and should always be received with caution.     (People v. Kennedy, 164 N. Y. 456, 15 N. Y. Crim. 241.)     With this remark everyone who has had experience in criminal trials must agree.     It is entirely too probable that the jury, not conversant with the arbitrary rule excluding hearsay evidence, would give weight to the accusation itself.     The evidence is admissible only if the accused is " at full liberty to make answer thereto."     (Kennedy Case, supra.)     No one is compelled to be a witness against himself. (Const., art. 1, § 6.)     The failure of the accused to testify on the trial is not evidence against him.     (Code Crim. Proc., § 393.)     When arraigned before a magistrate he may remain silent, or if he elect to make a statement the questions which may be asked him are prescribed by law (Code Crim. Proc., § 198), and he may not be questioned as to guilt or innocence.     It is from considerations which underlie these principles of evidence in the domain of criminal law that the question has been mooted whether evidence of the defendant's conduct in the face of accusations when he is under the restraint of arrest is competent.     I desire only to ascertain and follow the rule that our Court of Appeals has laid down on this subject.     Such rule I am bound to follow without pursuing the subject in other jurisdictions or in textbooks, and without regard to my own opinion.     There are two *dicta* directly to the effect that such evidence is not competent.     One is found in People v. Smith (172 N. Y. 210), another in People v. Marendi (213 id. 600).

These *dicta* would govern me except for well-considered decisions to the contrary. (Kelley v. People of the State of N. Y., 55 N. Y. 565; and, in effect, People v. Ferrara, 119 id. 414, 25 N. Y. Crim. 121.) On these decisions I rest. The resulting rule, I think, is that the fact that the defendant is under arrest affects the weight and not the competency of the evidence.

I now turn to the episode that took place during the examination of Lucia Della Mura. I have already stated that the district attorney, after he had proved the fact of the robbery, turned the witness over to the defendant for cross-examination. It is obvious that the district attorney knew that the witness would not identify the defendant as one of the robbers. When defendant's counsel declined to cross-examine, the district attorney took the witness again and, without asking her directly whether the defendant was one of the robbers, began to cross-examine her on previous statements which it was suggested that she had made to that effect. The witness was also interrogated as to what took place in the Magistrate's Court, where the defendant was held for the grand jury. The district attorney read to her what he said was a transcript of her testimony before the magistrate, as follows: "About 8 P. M. on that date, the 24th of November, the said Cascia, accompanied by two unknown men, entered the grocery store, conducted by me, at the premises 100 Harrison street, and that while the said Cascia did point a revolver at and in my direction, the two unknown men went behind the counter and took the money and ring." She was then asked if she so swore in the Magistrate's Court. The witness fenced instead of answering the question directly, and finally said she did not remember. At this point for the first time the defendant's counsel objected but did not press the objection, and no exception was taken. It will be noted that at no time during this examination was the witness asked directly whether the defendant was one of the robbers.

It is difficult to see any rule of evidence or administration

under which this evidence could have been admitted.    There are many cases which hold that where a counsel is surprised at the testimony of his witness he may refresh the recollection of the witness by calling attention to prior statements, and may probe his conscience for the purpose of compelling him to testify to the truth.    This rule is well established.    But the district attorney was not surprised in this case.    He knew before he began the examination that this witness would not identify the defendant.    He did not ask her the question.    It seems to me that the purpose and effect of this line of inquiry was to bring before the jury these prior hearsay statements of the witness upon the very issue upon which this case turned, namely, the question of identity.    In doing this the district attorney succeeded in getting before the jury, *first,* that the witness had stated, immediately after the robbery, that defendant was one of the robbers, and, *second,* that she had sworn to it in the Magistrate's Court, although the last was rather by way of innuendo than by direct proof.    But when the jury heard the district attorney read the affidavit which he said was the information laid by this witness before the magistrate, the belief was necessarily borne in upon them that the affidavit was actually made and sworn to by the witness.    I think the method the district attorney pursued was erroneous.    As no objection and exception were taken to this evidence, no error of law was committed.    (People v. McDonald, 159 N. Y. 309, 14 N. Y. Crim. 100.)    But nevertheless if we are convinced that upon this delicate issue of identity the admission of this evidence was unduly prejudicial to defendant, so that he did not have a fair trial, it is competent for us to reverse.    (Code Crim. Proc., § 527.)    I must, therefore, go further.

I have already reached the conclusion that it was competent for the district attorney to prove by Officer Guerin that this witness had identified the defendant at 100 Harrison street. In view of this, the suggestive examination of the witness on a fact subsequently proved by Guerin was harmless.    That

leaves for consideration, therefore, only the question of the use of the affidavit made before the committing magistrate. But it is difficult to see that the jury would give more credence to this than they would to the evidence that the witness accused the defendant in her store soon after the commission of the robbery. I consider that the method adopted in examining the witness Lucia Della Mura presents a grave question to an appellate court which is not confined to the determination of pure questions of law; but the best judgment I can form, after a careful consideration of the record, is that as the evidence is sufficient to sustain the conviction, the admission of this particular evidence may be disregarded. (Code Crim. Proc., § 542.)

I find no other point in the case which calls for discussion, and am of opinion that the evidence justified the conclusion that defendant had a fair trial and that there was no substantial error of law.

The judgment of conviction should be affiremd.

RICH, KELLY and JAYCOX, JJ., concur; JENKS, P. J., reads for reversal:

JENKS, P. J. (dissenting):

I dissent. The circumstance of the trial is stated in the prevailing opinion.

I think that there is capital error in the admission of the silence of the defendant. At that time he was under arrest. (Code Crim. Proc., §§ 167, 171.) In People v. Marendi (213 N. Y. 613) the eminent judge who wrote for the court says: " The defendant made a response in his own language, which no one present could interpret. *Even if he had stood mute his silence could not have been construed as an admission, because he was then under arrest and not called upon to speak or deny an accusation.* (People v. Smith, 172 N. Y. 210, at page 234; Commonwealth v. McDermott, 123 Mass. 440.)" And a read-

ing of People v. Smith (supra) reveals that the eminent judge who wrote for the court says, referring to the defendant: *" Moreover, he was at the time under arrest and in the custody of an officer, and might well have been silent without its being regarded as an acquiescence in any act proved to have been performed.* (Commonwealth v. McDermott, 123 Mass. 440; State v. Diskin, 44 Am. Rep. 449.)"

I think that these are cogent statements of the principle that should obtain in this instance. The Constitution of New York provides: "No person shall * * * be compelled in any criminal case to be a witness against himself." (Art. 1, § 6.) This organic law is embodied in the Code of Criminal Procedure, § 10: "No person can be compelled in a criminal action to be a witness against himself." It was defendant's silence when in the hearing of the speaker, and after the utterance of the speaker, that made the "evidence." And the defendant *was* "compelled." His physical presence was *enforced,* and he could do nothing further by way of protest or protection than by standing then and there mute. Thus, in spite of his own practical invocation to the full of the organic and criminal law against self-crimination, the defendant was compelled to furnish evidence against himself, declared competent in his trial. But at trial his neglect or refusal to testify cannot create any presumption against him. (Code Crim. Proc., § 393.) If when under arrest the mere silence of the defendant constitutes evidence that makes for his guilt, then one purpose of the organic law is thwarted, for the reason that the defendant is required to furnish evidence against his will in a compulsory way. (See People v. Tice, 131 N. Y. 655.) And see, too, the principle as stated in Talcott v. Harris (93 N. Y. 567, 572): "It would be going very far to hold that a party arrested upon *ex parte* affidavits should be considered as assenting to their verity because he omitted or refused to answer them before the time which the law allows him for that purpose. We are unable to see how such testimony can be

justified." It is not the administration of the oath that is safeguarded to him, but the compulsory feature of such an occasion. (People v. Ferola, 215 N. Y. 290.)

But it is said by my brother who writes for the court, that these statements of the rule in People v. Marendi and in People v. Smith (supra) are but *dicta.* That may be, in that the rule stated was not essential to the judgments, but if so these statements are *judicial,* not *obiter dicta,* and not made by way of argument or illustration, but as declarative of a rule most important, fortified by citation of precedents. Moreover, it is to be noted that Kelley v. People of the State of N. Y. (55 N. Y. 565), relied upon by the majority of the court in this case, was cited by both counsel in People v. Smith (supra). To my mind, these deliberate statements of the general principle are entitled to the highest respect and consideration as the careful utterances of distinguished judges of our highest court—utterances which do not relate to first impressions, but state a general rule in furtherance of the spirit of our organic law, and which are in harmony with the adjudications of the courts in other jurisdictions. (" Dictum," Anderson Law Dict.; " Dictum," Bouvier Law Dict. See, too, Railroad Companies v. Schutte, 103 U. S. 143; cited in Union Pacific Co. v. Mason City Co., 199 id. 166, 15 C. J. 953.)

The argument in Kelley v. People of the State of N. Y. (supra) is that when declarations are made in the presence and hearing of the accused touching or affecting his guilt or innocence, " and he remains silent when it would be proper for him to speak," it is the province of the jury to interpret the silence. And the argument is pursued with the statement, " and, therefore, except in those cases where the statements are made upon an occasion and under circumstances in which the individual sought to be affected could not with propriety speak, as in the progress of a judicial investigation," etc., " the evidence is competent." And the rule is finally stated as follows: " It is no objection to the admission of the declara-

tions of the accused, as evidence, that they are made while he is under arrest, and his *admission, either express or implied,* of the truth of a statement made by others under the same circumstances is equally admissible.    His conduct and acts, as well when in custody as when at large, may be given in evidence against him, and their cogency as evidence will be determined by the jury." (Italics mine.)    (Citing People v. Wentz, 37 N. Y. 303; Hochrieter v. People, 2 Abb. Ct. App. Dec. 363; McKee v. People, 36 N. Y. 113; Teachout v. People, 41 id. 7; Commonwealth v. Cuffee, 108 Mass. 285, and Commonwealth v. Crocker, id. 464.)    My respectful contention is that there is a manifest difference between the acts or declarations of the accused under such circumstances, and his standing mute.    In the former case there is affirmative action by the accused; in the latter he withholds all action so far as is physically possible. There is the clash of positive and negative.    A number of cases are cited by the learned judge in Kelley's Case (supra).    In Teachout v. People (41 N. Y. 7, 10) the defendant *testified* before the coroner when a party charged with the crime.    In People v. Wentz (37 N. Y. 303) there was a confession.    In Commonwealth v. Cuffee (108 Mass. 285) there was a confession.    In Commonwealth v. Crocker (108 Mass. 464) there was a denial of guilt.    In Hochrieter v. People (2 Abb. Ct. App. Dec. 363) Hochrieter was indicted for murder, and a policeman testified that he brought the accused before the victim.    The question involved was whether what a witness named Egner said and did in the presence of the prisoner was competent.    In McKee v. People (36 N. Y. 113) the question was as to the competency of the statements of the prisoner's wife in his presence.    These are all of the precedents cited in Kelley v. People of the State of N. Y.    It seems to me that none is in point, or at least authoritative, on the question then before the court.    In consideration of Kelley v. People of the State of N. Y. (supra) in Greenleaf on Evidence (Vol. I [15th ed.], p. 275), the note states that the authorities cited to

sustain the holding, to wit, Commonwealth v. Cuffee (108 Mass. 285) and Commonwealth v. Crocker (id. 464), do not support the principle.

I think that the occasion considered in the case at bar, to adopt the language of exception of the court in Kelley's Case (supra), was one when it would not be "proper for him to speak," and one of "those cases where the statements are made upon an occasion and under circumstances" when the defendant "could not with propriety speak." The head note in Commonwealth v. McDermott (123 Mass. 440), cited by the court in Marendi's Case (213 N. Y. 600) correctly reads: "A person who is held in custody on a charge of crime jointly with another person is not called upon to contradict statements prejudicial to him, made in his presence by the other person, in answer to inquiries made by an officer; and such statements, though not contradicted by him, are not admissible in evidence against him." (See, too, Greenl. Ev. [15th ed.], § 197; 2 Wharton Crim. Ev. [10th ed.. Hilton], 1409, and note with cases.) I am much impressed by the decision in Commonwealth v. Kenney (12 Metc. [Mass.] 235, 238), by Shaw, Ch. J., who says: "The subsequent statement, if made in the hearing of the defendant (of which we think there was evidence), was made whilst he was under arrest, and in the custody of persons having official authority. They were made, by an excited, complaining party, to such officers, who were just putting him into confinement. If not strictly an official complaint to officers of the law, it was a proceeding very similar to it, and he might well suppose that he had no right to say anything until regularly called upon to answer. We are therefore of opinion that the verdict must be set aside and a new trial granted."

I respectfully urge that the rule in Kelley v. People of the State of N. Y. (supra), does not and should not apply when a defendant under arrest stands motionless and mute.

In Pepole v. Tice (131 N. Y. 655, 10 N. Y. Crim. 170) the court say that the constitutional provision (Const. art. 1, § 6)

protects persons charged with crime against "inquisitorial and compulsory proceedings." The days of the boot and the thumb screw are gone. · But what in our day can more resemble inquisitorial or compulsory proceedings than the opportunity afforded by the arrest of a defendant while he remains alone, without counsel, or the protection of judicial procedure. And yet the proposition is he cannot stand even mute and at gaze, without affording that evidence against himself which is made in part by the accusation of others but only completed by his own silence.

The case at bar is far from strong on the proofs of identification, and I have grave doubts of the legal propriety of the episode described by my brother Blackmar, with reference to the examination of the witness Lucia Della Mura.

I think that a new trial should be ordered.

Judgment of conviction and order of the County Court of Kings county affirmed.