Dwight, J.
—The plaintiff in error was convicted in the general sessions of Hew York city, of the murder of his wife in that city, March 26, 1867. The conviction was of murder in the first degree. The indictment contained three counts, alleging severally, a killing'with an axe, with a knife, and by beating and choking. After the evidence was in, the prisoner moved that the people be required to elect upon which of these counts they would go to the jury, which was refused by the court, and the prisoner excepted. A witness for the people, George Cram, said that on the day of the killing, at about one o’clock in the afternoon, he accompanied the prisoner home ; that the latter was very much intoxicated ; that as he entered the room where his wife was, he staggered against her and “went to strike her;” that witness and the wife both remonstrated, and the prisoner staggered over into a rocking-chair and went to sleep ; that witness then advised the wife, who was not sober, to go into the adjoining room and lie down, and upon her doing so told her he must go to his work ; that the woman thereupon begged him not to go, and asked him, “Do you think he will kill me ?” to which witness replied, “Ho, what humbug ;” that at the time of this conversation the prisoner was in the adjoining room (the connecting door being open) in the chair asleep, “ sound and solid ;” that he was asleep, *115 as soon as lie struck the chair, and that witness shortly afterwards shook him in the chair, and knew he was unconscious. The prisoner’s counsel objected to the evidence of the conversation between Cram and the deceased, under the circumstances above narrated. The objection was overruled, and the prisoner excepted.'
After verdict, the prisoner moved the court for a new trial, on the ground that the verdict was against the law and the evidence. The court refused to entertain^ the motion, deciding that it had no power to grant a new trial, the recorder at the same time remarking that he was “ quite sure that no argument of counsel would induce him to grant him a new trial either upon error of law or of fact,” and the prisoner excepted to the refusal to entertain a motion for a new trial. One other alleged error was relied upon by the plaintiff in error, viz : The refusal of the court to charge, “ That in order to constitute murder in the first degree, the premeditation must have existed prior to the immediate occurrence which resulted in death.” But the whole question here involved, including the construction of the act of 1862, defining the degrees of murder, was disposed of in the case of Fitzgerrold v. People, decided at March term (4 Abb. Pr. N. S., 6S), and will not be reconsidered here. The evid mce showed that the prisoner had always been a quiet and peaceable man, and so far as appears, had lived pleasantly with his wife down to about the time of her death ; that on St. Patrick’ s day, nine days before the event, the prisoner and his wife had both commenced to drink, and had both been constantly under the influence of liquor, down to the hour of the catastrophe. There is no evidence of any motive for the commission of the crime.
The first objection raised by the plaintiff in error, viz : to the refusal of the court to require the people to elect on which count of the indictment they would ask for a conviction, is untenable, as was said by Chancelor Walworth in Kane v. People, 8 Wend., 203, “ It is every day’s practice to charge a felony in different ways in several counts for the purpose of reaching the evidence as it may *116 come out upon the trial,” and “ if the different counts are inserted in good faith for the purpose of making a single charge the court will not compel the prosecution to elect.” I am not aware that the correctness of this practice has ever since that time been questioned.
The second objection, viz: that ^he court erred in admitting the testimony of the witness Cram to the conversation between himself and the prisoner’s wife, I think is well taken. That conversation can not be evidence unless on the theory that it took place in the presence of the accused, and not merely in his bodily presence, but in his hearing and understanding. A declaration made in the presence of one unconscious from sleep or stupor, cannot be evidence against him, and that seems to have been the condition of the prisoner here. The learned judge below thought it was for the jury to say whether he was wholly unconscious or not, but the evidence on that point was uncontradicted, and to my mind seems positive. The witness says, he was very much intoxicated; that immediately upon coming into the room, he staggered over into a rocking-chair and went to sleep ; that he appeared to be asleep, sound, solid ; that as soon as he struck the chair he was gone; that about the same time, witness shook him in the chair and was satisfied he was unconscious. It is true the witness testifies, that soon after the conversation he told the prisoner to go to bed, and that he gets to bed with the assistance of the witness ; but I have no doubt it was then that he shook him in his chair, and found such means necessary to rouse him sufficiently to be got to bed.
But aside from this condition of the prisoner, and whatever the degree of his stupor, the conversation was not even in his bodily presence. The fact, apparently overlooked by the learned judge below, is that the prisoner was in one room, and the interlocutors, the witness and the deceased, in an .adjoining room. Cram had induced the deceased to go into his room adjoining that in which the prisoner and his wife lived, and lie down ; he had gone in with her, and it was when he was about *117 to leave her there that the conversation took place. It is true he testifies that the door between the rooms ivas open, but there is no evidence of the position of the several parties relative to the door, nor of their distance from it, nor whether the tone of voice was such as could have been heard from one room to the other. Since, therefore, this conversation was not in any sense in the presence of the accused, it was clearly inadmissible; and, unless it appears that it cannot in any degree have operated to the prejudice of the prisoner, its admission is good ground for a new trial. Upon this point it seems to me that there can be no question. The evidence of the prisoner’s guilt was wholly circumstantial; both the fact of killing and the design to effect death were required to be inferred from the circumstances mainly of opportunity and of the conduct of the prisoner, both before and after the event. Prominent among these were the facts of some threats uttered by the prisoner on the same day of the killing, though not in'the presence of the deceased ; and the evidence of the conversation with Cram certainly tended to show that the prisoner had previously made similar threats to the deceased herself, or had in some other way impressed her with fear of fatal violence at his hands. The language of Cram clearly indicates an apprehension in his mind that the prisoner entertained murderous purposes towards her ; and it is not only impossible to say that this proof cannot have influenced the minds of the jury to the prejudice of the prisoner, but it is difficult to see how it can have failed to do so. In my opinion, the admission of this testimony was an error fatal to the trial.
The remaining objection of the plaintiff1 in error which I shall consider is, that the recorder erred in refusing to entertain a motion for a new trial. In the opinion below it is said, “The recorder denied this motion on its merits —but surely it is not possible to decide such a motion on its merits without entertaining it; and in this case the recorder distinctly refused to entertain the motion, on the ground that he had no power to grant it, although lie added that if he had the power lie would not exercise it. *118 There can be no donbt that the recorder was wrong in his opinion on the question of the power to grant a new trial. The act of 1859 (Laws of 1859, ch. 339, §4) provides, “The courts of sessions of the several counties in this State shall have power to grant new trials upon the merits or for irregularities or on the ground of newly- discovered evidence in all cases tried before them.” It is difficult to see how this provision could ever have been understood not to include the “court of general sessions of the peace, in and for the city and county of New York.” And this court, in the case of Lowenburg v. People (27 N. Y., 336), held that substantially the same language in another act did include that court. The question in that case arose under chajker 208 of the laws of the same year (Laws of 1859, chapter 208, § 1), —which provides, “ It shall be lawful for the court of sessions of any county of this State, to continue its sittings at any term thereof, so long as it may be necessary,” etc., etc., and the opinion in that case which upon this point seems to have been concurred in by the whole court, holds the following language, “The court of general sessions of the peace, in and for the city and county of New York, is but a court of sessions of the county of New York, and is designated in the act of 1859 by the words 1 The court of sessions of any county of this State.’ ” There can be no question but that the designation in chapter 339 is equally inclusive with that in chapter 208, and consequently no question but that the court of general sessions of New Yoi-k has the power to grant a new trial on the merits. Such being the case I cannot avoid the conclusion that a substantial right was denied the prisoner in this case, viz : the right to have Iris motion for a new trial heard by the court which tried him. I cannot think this motion was decided upon its merits. The remark' of the recorder about not being induced to grant the motion, seems to have been a hasty declaration made without hearing counsel, and coupled in the same breath with the decisive announcement that he had no power to entertain the motion, nor am I prepared to say, as is said in the opinion below, that if the recorder had *119 granted a new trial it would have been an error. I do not think an appellate court can decide what effect a review of the case might have had upon the judge who tried it, and who heard and saw all the witnesses.
If the prisoner had a right to move for a new trial, he had a 3‘ight to have that motion heard and considered. That right was denied him; and, in my opinion, that denial was error.
If the views which I have expressed upon the second and third objections of the plaintiff in error, as enumerated above, are correct, it follows that the judgment of the general term of the supreme court, and that of the general sessions, should be reversed, and a new trial granted.
Judgment reversed.