VICTOR IRVING *v.* STATE OF MISSISSIPPI.

[47 South., 518.]

1. CRIMINAL LAW AND PROCEDURE. *Evidence. Statements of others, not denied.*

The failure of the accused to deny a statement of another cannot be used in evidence against him unless it be affirmatively shown with clearness that it was made in his hearing.

2. SAME. *In another room. Case.*

Where, on a trial for burglary, the time at which the accused reached home on the night in question was a vital issue, the admission in evidence of his mother's statements on that subject, made when he was in another room, was erroneous.

FROM the circuit court of Attala county.

HON. OLIVER A. LUCKETT, Special Judge.

Irving, appellant, a negro, was indicted, tried, convicted and sentenced for burglary and appealed to the supreme court.

The crime was committed at one o'clock at night. A searching party just after daylight on the morning of the same day followed tracks made by the bare feet of the supposed burglar to the home of defendant's mother, and one of the party, Weeks, asked the mother at what time the night before Victor (the accused) reached home. The mother responded "a few minutes after one o'clock," and she further stated in conversation with Weeks, that Victor came home on foot and barefooted. This colloquy with the mother in her room was had in an ordinary conversational tone of voice; the defendant was in an adjoining room and the communicating door between the two rooms was

standing open; the witnesses thought defendant must have heard what was said, for when the inquiry was made, immediately following the above statements, as to where Victor was, he responded from the adjoining room, "Here I am," and then came out to where the conversation had been conducted, but nothing on the subject of his return home the night before was said after he came out.

On the trial, over defendant's objection, the court below permitted the state to prove the mother's statements by Weeks; the mother having died in the mean time. Defendant introduced several witnesses who each testified that the accused was with them on the night in question from 8 p. m. to 3 o'clock a. m., "in a crap game, at the gambling yard, back of Miller's jack lot."

*Dodd & Dodd* and *McWillie & Thompson,* for appellant.

The first piece of incriminating testimony counted upon by the state was wholly incompetent and the admission of it over defendant's objection is assigned for error. It consists of statements said to have been made by appellant's mother, now deceased, out of appellant's presence, to Weeks, one of a searching party, to the effect that defendant came to her house about one o'clock on the night in question walking and barefooted.

While it was affirmed by Weeks that appellant could have heard his inquiries and the mother's responses, yet it was not disputed that appellant was in another room. That appellant heard the conversation between Weeks and his mother is not shown, because, the physical surroundings were such that Week's affirmation that he heard could have been nothing more than an opinion of that witness; nor is the case aided by the fact that appellant answered the inquiry as to his whereabouts. Conversations between others should never be admitted in evidence against a defendant if there be doubt as to whether he heard them. 2 Wigmore on Evidence, § 1071; *Ib.* § 1072, p. 1275, par. 2, and notes. A man's failure to contradict his own mother

or wife should never be used to his discredit. In this case the mother's statement that appellant reached her house at one o'clock the night before and that he came there on foot and barefooted, did not demand or require a contradiction, even if a man is sometimes required to contradict his mother, except upon the assumption that he were guilty. If he were perfectly innocent of the crime and heard his mother's statement but reached her home at seven o'clock the evening before on horseback and wearing shoes he was under no obligation to make known the facts; his mother did not charge him with any crime or with any thing which naturally tended to crime and yet her unsworn statements were used to destroy an *alibi* testified to by several witnesses; they were also used to prove, what no witness swore to, that appellant was walking out from home barefooted the night Miller's house was broken and entered. We mention these circumstances not to show that the testimony was inadmissible (its incompetency is plain under the authorities cited) but to prevent any misconception as to whether its admission constitutes reversible error.

*George Butler,* assistant attorney-general, for appellee.

The most serious question in this case is as to the admissibility of the evidence of Weeks with reference to the statement of Dilly Irving, the mother of the accused. Weeks with others followed a large barefoot track from Miller's house to Dilly Irving's house. Dilly was in one room and accused in an adjoining room. "Not over fifteen feet" from Dilly. The door between the rooms was open and Weeks was about ten feet from Dilly when he asked her in the usual tone of voice who came to the house during the night. Dilly wanted to know why Weeks enquired and he told her that a crime had been committed in the neighborhood, and they were trying to locate the proper parties. She answered that Victor came in there about one o'clock walking bare-footed.

Mr. Wigmore says . . . "presence, of course implies prox-

imity within a distance sufficient to permit hearing." 2 Wig-
more, Evidence, sec. 1072, (2).

Accused had knowledge of the fact stated by his mother. He
was close enough to hear, and evidently did, because he re-
sponded to the conversation. Mr. Wigmore thinks that the rules
as to the admission of this class of testimony are all too strict.
None of the cases cited in note 5 to sec. 1072, *supra*, are author-
ity against the admissibility of this evidence. In those cases
it appears that the party was out of sight, as in this, but it does
not appear that the statements were heard. Here appellant
heard. But it is said a man's failure to contradict his own
mother or his wife should never be used to his discredit. This
is not true though the wife is an incompetent witness. Expressly
so held in *Queen* v. *Morron*, 1 Cald., 123, *et seq.*, and again it
is said that under the circumstances he was under no obligation
to speak. The better rule is that any statement made in the
presence of an auditor is admissible unless he can show that he
lacked either the opportunity or the motive to deny the correct-
ness. 2 Wigmore, Evidence, sec. 1071, p. 1255.

Appellant certainly failed to make this showing. He knew
whether the statement was true or false. He knew a crime had
been committed. He knew that Weeks was searching for the
criminal and wanted to know who came in during the night.
Certainly his failure to deny his mother's statement was a cir-
cumstance against him.

Argued orally by *R. H. Thompson*, for appellant and by
*George Butler*, assistant attorney general for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

It was fatal error to admit the statements said to have been
made by appellant's mother out of the appellant's presence to
Weeks, one of the searching party, to the effect that defendant
came to her house about one o'clock on the night in question. We
are not prepared to say that it is affirmatively shown with the
clearness required in criminal cases that this statement was

heard by the appellant. We do not think this can be safely affirmed on this record; wherefore the error is fatal.

It is to be specially noted that the appellant did not himself state at what time he came home, and time was the one vital thing involved. We decide no other error assigned at this time.

*Reversed and remanded.*

FLETCHER, J., took no part in the decision of this case.