WILLIAM TATE v. STATE OF MISSISSIPPI.

[48 South. 13.]

1. CRIMINAL LAW AND PROCEDURE. *Homicide. Murder. Self-defense. Instruction.*

An instruction in a murder case to the effect that if defendant placed his hand on his pistol and made a remark designed to provoke a difficulty with the deceased, who at the time was doing nothing, and that the remark brought on the fatal difficulty, the defendant was guilty of murder, although deceased fired the first shot, too greatly narrows the right of self-defense and defendant's guilt not being manifest, constitutes reversible error.

2. SAME. *Failure to contradict. Evidence. Declarations by co-defendant.*

A declaration of a co-defendant, made after the killing, in the presence of defendant, directed to the assembled crowd, is not admissible in evidence because of defendant's failure to contradict it, where defendant at the time was prostrate on the ground and suffering from a severe wound received in the encounter.

FROM the circuit court of Yazoo county.

HON. WILEY H. POTTER, Judge.

Tate, appellant, was indicted and tried for the murder of one Dixon, was convicted and sentenced to the penitentiary for life, and appealed to the supreme court. The opinion of the court states the facts.

*Henry, Barbour & Henry,* for appellant.

It is apparent that this is a very delicately balanced case on the facts, hence any errors in the trial must have militated most seriously against the rights of appellant. Under the circumstances the court below erred in giving the first instruction for the state. This instruction is wrong for two reasons: first, there is no evidence whatever upon which to base it; and, second, it is violation of the principle that an instruction estopping the defendant from pleading self-defense must contain all—not nearly all, but entirely all—of the elements necessary to the estoppel.

There was no evidence to justify the court below in charging the jury, as set forth in this first instruction for the state, that, if they should find from the evidence that appellant met the decedent, and, with his hand upon his pistol in his pocket, made the specified remark to provoke the difficulty with decedent when decedent was doing nothing, and that the remark brought on the difficulty causing the decedent's death, appellant should be held guilty of murder even though decedent fired the first shot. Four eye-witnesses of the homicide were introduced in evidence; two of them, Julius Runnels and Hastings Newman, were state's witnesses. The other two, Will Johnson and Will Redditt, were for the defense. From none of these witnesses is there a suggestion or intimation that the appellant "had his hand in his pocket and on his pistol" when he asked the specified question of the decedent. Yet the jury were allowed, under this first instruction, to consider that there was evidence that such was the situation. This court has repeatedly held that the giving of a state's instruction not based upon the evidence is fatally erroneous if by any means it might have misled the jury to a verdict of guilty. *Oliver v. State,* 39 Miss. 526; *Cothran v. State,* 39 Miss. 541; *Spradley v. State,* 80 Miss. 82, 31 South. 534.

This first instruction for the state is erroneous in that it cut off appellant's right of self-defense from the jury's consideration. The evidence does not show this to be the very rare case

where on the facts the instruction is justified at all, nor one where all of the elements essential to an estoppel are embraced in the instruction. The instruction omits the very essential element that at the instant of the killing there had been an abandonment of the unlawful purpose which was intended when the difficulty was "invited or provoked." The appellant was not given the benefit of any existing purpose to abandon the difficulty at any time after it was "invited or provoked." Even though the appellant had armed himself in his expectation of meeting the deceasd, and even though appellant had his hand in his pocket on his pistol, and had invited or provoked the conflict, he would still not be estopped unless at that moment he shot and killed the deceased pursuant to the *original* wrongful intention with which he had armed himself and had entered the combat. If, when he shot, he acted on the *bona fide* intent to protect himself, the instruction militated against his rights. *Lofton v. State,* 79 Miss. 723, 31 South. 105; *Cooper v. State,* 80 Miss. 175, 31 South. 579; *Pulpus v. State,* 82 Miss. 548, 34 South. 2; *Jones v. State,* 84 Miss. 194, 36 South. 243; *Herring v. State,* 87 Miss. 628, 40 South. 230; *Garner v. State,* 93 Miss. 843, 47 South. 500.

The declarations made by appellant's co-defendant, after the killing, but in appellant's presence, were incompetent, and should not have been allowed in evidence before the jury; especially as the declarations were not made to appellant but the surrounding crowd of persons. It is settled that when the state, in a criminal trial, offers testimony of this character, it must be clearly shown that the incriminating statement was heard, and not denied, by the defendant. *Irving v. State,* 92 Miss. 662, 47 South. 518. See also 2 Wigmore, Ev. 1257; *Kelly v. People,* 55 N. Y. 565; *People v. Koerner,* 154 N. Y. 355; *McKee v. People,* 36 N. Y. 113; *State v. Epstein,* 25 R. I. 131.

In the absence of clear proof that appellant heard the alleged declarations of the state's witnesses, Reynolds and Newman, as he lay wounded upon the ground immediately after the shoot-

ing, it will hardly be presumed that appellant did hear and understand the import of the words, especially as it is not denied that he was dazed, weak from loss of blood, his arm being shot off, and his whole nervous system wracked by intense physical suffering. *Gillum v. State,* 62 Miss. 548; *Lanergan v. People,* 39 N. Y. 39; *Williams v. State,* 42 Ark. 380; *Jones v. State,* 65 Ga. 147; *Simmons v. State,* 61 Miss. 242.

*Geo. Butler,* assistant attorney-general for appellee.

Considered in the light of all the testimony in this case, the first instruction for the state cannot have operated to the prejudice of appellant. It may be that the evidence failed to show that the appellant had his hand in his pocket on his pistol, at the time he spoke to Dixon. But this is an immaterial matter, and in no way prejudiced appellant's rights before the jury. *Thomas v. State,* 61 Miss. 60; *McCoy v. State,* 91 Miss. 257, 44 South. 814.

It is contended by appellant that error was committed in admitting, over appellant's objections, certain statements made in the presence of the appellant while the appellant was lying wounded on the ground, which remarks were not at the time denied by appellant, for the reason that he did not hear or understand them. It is true that the appellant was seriously wounded and was lying on the ground when these statements were made and it appears that he had sufficient understanding at the time to respond to questions propounded to him and, to use the language of one of the witnesses, "He was in his right mind resting easy and lying quiet." These statements were addressed to him, and the court below confined the testimony of the witness to such remarks as were made in the immediate presence of appellant. Hence there was no reversible error. *McCoy v. State,* 91 Miss. 257, 44 South. 814; *Thomas v. State,* 61 Miss. 60; 2 Wigmore Ev. § 1072.

Argued orally by *J. F. Barbour,* for appellant, and by *George Butler,* assistant attorney-general, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

This case is a very close one on the facts, and is not, therefore, a case in which we can say that any serious error is not reversible. The first instruction for the state is in the following words: "The court instructs the jury, for the state, that if you believe from the evidence beyond a reasonable doubt that Will Tate met Bunk Dixon in the public road; and that Will Tate, with his hand in his pocket and on his pistol, said to Bunk Dixon, 'Can you play the same game you played last night?' or words to that effect, intending by the use of the remark to invite and provoke a difficulty with deadly weapons then and there in the public road, at a time that Bunk Dixon was doing nothing that would cause any apprehension of danger to Tate, and that the language so used did then and there invite and bring on the difficulty, in which deadly weapons were used in the public highway, and in which Bunk Dixon lost his life, then Will Tate is guilty of murder; and this is true, even though the jury may believe from the evidence that Bunk Dixon fired the first shot." The language of this instruction, "with his hand in his pocket and on his pistol," is erroneous, for the obvious reason that there is no evidence whatever in the record to show that the defendant had his hand in his pocket on his pistol. But we would not reverse for this inaccuracy alone, since it does not seem to be very material whether he had his hand on his pistol in his pocket, or whether he had his hand on his pistol in his bosom. But the fatal vice in the instruction is that it effectually cuts off the right of self-defense. We have over and over again warned circuit judges against giving this sort of charge, and wherever it is given and a conviction results the judgment will always be reversed, except where this court can say, looking over the completed record, with confidence, that the defendant's guilt is so overwhelmingly manifest that no other verdict than that of guilt could probably be rendered. We cannot say this in this case, and this charge is, for that reason, reversible error.

In the course of the trial it was shown by the state, by the

testimony of the witnesses Julius Reynolds and Hastings New-
man, that after the appellant had come back from the pursuit
of the deceased, and had fallen on the ground, one Will Red-
dick, who is also under indictment for this same offense, said,
not apparently addressing the remark to the appellant, but to
the crowd generally, "I told him to get the drop on the son of a
bitch and not to say anything to him." The witness Newman
adds this last statement, "not to say anything to him." Neither
of these witnesses testifies that the remark was addressed di-
rectly to the appellant. Clint Tate does testify that he heard
him make practically that remark to the appellant himself.
The appellant made no response to any of these remarks. John
Giddeon testifies that he asked Tate, the appellant, where he
was shot, and he said in the arm, and that he asked him where
was Bunk, and he said Bunk was gone, and that he (Giddeon)
then asked the appellant, "Out of all that shooting, didn't Bunk
get hit?" and that then Will Reddick, not appellant, said, "I
don't know whether either one of us hit him, or not." This wit-
ness further says that he was there present, holding his coat up
to keep the sun off the appellant, who was lying on the ground,
with his left arm shot practically off. Here, then, was the
appellant, lying in the hot sun, on the ground, with his left arm
shot off, suffering, of course, intense pain, with his mind neces-
sarily greatly disturbed by his condition, pain, and suffering, in
a crowd of negroes, including those named, sought to be bound,
because he did not respond to some statements, not addressed to
him at all, and one statement which is said to have been ad-
dressed to him. These statements were objected to upon the
ground that it was not shown with that clearness which is re-
quired in criminal cases that the appellant heard these state-
ments, comprehended their damaging import, and understood
their nature to be such as to call for denial from him.

We have read carefully all the authorities cited on this propo-
sition, and we are all thoroughly satisfied that the conditions
making these statements competent testimony were not met by

the evidence disclosed in this record. We recently passed upon this proposition in the case of *Irving v. State,* 92 Miss. 662, 47 South. 518.

In Wigmore on Evidence, vol. 2, p. 1257, it is said: "On the other hand, if under the circumstances it appears that the party was in fact physically disabled from answering, his silence, of course, signifies nothing, and the statement is inadmissible. So, too, if the party had plainly no motive for responding his silence permits no inference; and this is often the case where the statement is addressed to another person, and not to the party himself." In *Kelly v. People,* 55 N. Y. 565, 14 Am. Rep. 342, it is said: "(1) The declaration must be pertinent to the occasion. (2) It must be made in the presence and hearing of the parties interested, and under circumstances which render a contradiction or explanation reasonable, if not true. (3) It must be about matters the truth of which was known to the accused. (4) A reply would have been natural and proper if the statements were false."

In the case of *People v. Koerner,* 154 N. Y. 355, 48 N. E. 730, the case was this: The defendant was indicted for murder and convicted; and it appears that the deceased was shot by a ·pistol in the hands of the defendant in New York City, on Seventh avenue, between Thirteenth and Fourteenth streets. Defendant admitted the shooting, but defended on the ground that the shooting was accidental; that his purpose was to commit suicide, which he attempted by placing the pistol to his head, when to prevent it the girl grasped the pistol and it was accidentally discharged, causing her death. At the time of the killing he was not mentally responsible for his actions. It appears from the evidence that the girl was shot three times, that the relations existing between her and the defendant were of an affectionate kind, that the defendant had asked her to marry him, and that an engagement existed between them, but the parents were opposed thereto. During the progress of the trial a Dr. Harrison was permitted to testify that after the shooting

the defendant, while lying upon the sidewalk, was shamming unconsciousness. It was the doctor's opinion that the defendant was conscious and could hear, but that he was simply shamming. The court permitted a witness to testify about a conversation which took place between the witness and a police officer, over the objection of the defendant. It was admitted on the theory that the silence of defendant amounted to an acquiesence in the statements made by the officer, and therefore binding upon him. The court said "that a party's acquiesence, to have the effect of an admission, must exhibit some act of voluntary demeanor or conduct. When the claimed acquiescence is in the conduct or in the language of others, it must plainly appear that such conduct or language was fully known and fully understood by the party before any inference can by drawn from his passiveness or silence. Moreover, the circumstances must be such as would properly and naturally call for some action or reply from one similarly situated. If he is silent when he ought to have replied, the presumption of acquiescence arises; but it is clearly otherwise when his silence is of such a character as not to justify such an inference. Thus, when a person is asleep, or intoxicated, or deaf, or a foreigner not able to understand the language employed, he cannot be prejudiced by statements made by others in his presence; nor is such silence an assent, unless the statements were such as to properly call for a response. The court in this case goes further and uses this language: "There is only one safe rule in a case of this kind, namely, statements in the presence of the defendant are only competent when he is in a position to hear and understand. *McKee v. People,* 36 N. Y. 113; *Lanergan v. People,* 39 N. Y. 39. If this condition is a matter of dispute, the statements in his presence are incompetent."

And in the case of *State v. Epstein,* 25 R. I. 131, 55 Atl. 204, the facts were as follows: July 26, 1901, the defendant, in company with Abraham Zarinsky, the person killed, went to the attic in which Zarinsky had his bedroom. Some troubles oc-

curred during the night, and Zarinsky was robbed of $200. The defendant was charged with robbing him and having struck him on the head with a bottle, which afterwards produced his death. The defendant during the difficulty was also wounded. Both the wounded man, Zarinsky, and the defendant, were carried in a patrol wagon to the police station. Zarinsky was seated in a chair, at that time apparently not seriously injured. The defendant appeared the most seriously injured, and was lying on the floor near Zarinsky, and in the presence of a police officer. While seated thus Zarinsky made a statement of how the defendant had knocked him in the head and robbed him, and to some extent gave a detailed account of the difficulty. The court held that under the circumstances of this case the evidence was not admissible, and used this language: "Even in those cases where it is held that evidence of charges made against him is admissible, the courts unanimously hold that it must plainly appear that the statements made were fully understood by the party before any inference can be drawn against him by reason of his silence. In the case at bar, therefore, we think most of the testimony in question should have been excluded in any event, for it not only does not plainly appear that most of the language used at the police station by Zarinsky to others was understood and appreciated by the defendant, but, on the contrary, we think it very clear that he did not understand the same and was not in a physical condition to enable him to understand it. He had jumped from the attic window to the ground, a distance of about twenty-five feet, where he lay in a helpless condition, seriously injured, until he was taken up bodily by the policeman, and placed in a patrol wagon, and taken to the station. He was laid on the floor in a helpless condition, and was suffering severe pain from the injury which he had sustained by the fall. In view of all these facts, we are clearly of the opinion that it is error to admit the testimony, except in so far as the accusations made were expressly replied to by the defendant. We are also of the opinion that it was error

to admit the statements made in the presence of the defendant immediately after his fall from the window, except as to one to which he made some reply. Such a fall must have left him in a dazed and semi-unconscious condition at the best, and it cannot be sâid with any show of reason that his silence while in such a condition, when charges and accusations were made against him, could be of the least weight as determining his guilt as to the crime now charged against him."

Greenleaf, in his work on Evidence (volume 1, par. 199), says: "Nothing can be more dangerous than this kind of evidence. It should always be received with caution, and never received at all unless the evidence is a direct declaration of that kind which naturally calls for contradiction." Chief Justice Shaw said, in *Larry v. Sherburne,* 2 Allen (Mass.) 34; "It is true there are cases where the party may be affected in his rights by proof of a silent acquiescence in the verbal statement of others; but such evidence is always to be received, and applied, with great caution, especially where it appears, as in this case, that the statements were made not by a party to the conversation, but by a stranger."

It must be perfectly clear, from these citations, as applied to the facts of this case, that the testimony fell far short of showing the conditions under which this testimony would be admissible, and its admission was fatal error. We notice at this time no other assignments of error than those passed on specifically.

*Reversed and remanded.*