(89 Misc. Rep. 262)

### PEOPLE v. HARCOURT et al.

(Court of General Sessions, New York County. February, 1915.)

CRIMINAL LAW ☞418—EVIDENCE—HEARSAY—DECLARATIONS OF THIRD PERSONS.

In a prosecution before a magistrate for disorderly conduct tending to a breach of peace, the testimony of a police officer as to a third person's declarations made in the presence of defendants while under arrest were inadmissible, where defendants were not called upon at the time to speak or deny the accusation, and denied at the trial that the third person made any declarations in their presence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 968–972; Dec. Dig. ☞418.]

George Harcourt and another were convicted of disorderly conduct tending to a breach of the peace, and appeal. Reversed, and new trial granted.

Walter L. Rathborne, of New York City, for appellants.

James E. Smith, Deputy Asst. Dist. Atty., of Olean, for the People.

ROSALSKY, J.   The defendants above named appeal from a judgment rendered in the City Magistrate's Court convicting them of the offense of disorderly conduct tending to a breach of the peace.   It is charged that the defendants attempted to swindle one Arthur Pinkerton, a passenger, who did not appear as a witness, out of the sum of $20 by means of what is commonly called a "confidence game."   It appears from the record that the officer had a conversation with Pinkerton in the presence of the defendants while they were under arrest, in the course of which Pinkerton is alleged to have made the following declarations:

"He told me that Harcourt told him he was a passenger, and that the other man came up and handed Harcourt some papers, and Harcourt asked for $70 off Pinkerton.  He said, 'I gave him $20,' and I said, 'What did you give him the money for?'  He said: 'He told me he had English notes, and he didn't have any American money, and, on the strength of that, he said he would change the English notes and give me the value of my money when we got out to sea.  He represented himself as a passenger on the ship, and I gave him $20, and I was about to go after the other $50 more in my stateroom when you placed them under arrest.'  I asked him to write down the circumstances on this envelope with his name and address and what it was for, and he wrote it down, in the presence of the defendants."

The defendants in their own behalf denied that Pinkerton made any declarations in their presence, and that whatever conversation the officer had with Pinkerton was in their absence.   In another part of the record it is not clear whether or not the officer in fact had the conversation with Pinkerton in the presence of the defendants.   If the alleged declarations made by Pinkerton to the police officer in the presence of the defendants, who were under arrest and who remained silent, are incompetent and cannot be considered as establishing the offense against the defendants, then the record is barren of any evidence tending to show that their acts constitute disorderly conduct tending to a breach of the peace.

The question of allowing in evidence declarations made by a person in the presence of an accused under arrest as proof of the fact tending to establish his guilt has resulted in great confusion among trial judges, although the Court of Appeals has repeatedly laid down in terse language the effect to be given to such evidence, when it is competent, and when its admission constitutes reversible error.   I have had before me lately many cases where the magistrates have erroneously admitted evidence of this nature, and therefore it seems to me that it might be profitable to refer to some of the leading cases dealing with the principle involved.   In People v. Friedman, 205 N. Y. 161, 166, 98 N. E. 471, 473, 45 L. R. A. (N. S.) 55, the court said:

"I think that an error was committed, although a harmless one under all the circumstances, in receiving testimony as to declarations by Kuhn in the defendant's presence which imported that Kuhn did not do the shooting, and from which it would follow that the defendant must have done it.  Inasmuch, however, as the responses made by the defendant to these declarations were virtually countercharges against Kuhn, and the conversation left each participant in the crime in the position of charging the other with being the principal offender, I do not see how the admission of the evidence could have done any injury.  Under some conditions, however, an error of this character might be extremely prejudicial to a defendant.  Ordinarily the unsworn state-

ments of others as to the circumstances of a crime are not provable against an accused person, even though they were made in his presence unless they elicited some express or tacit admission from the defendant tending to establish his guilt. It is only for the purpose of eliciting or explaining some compromising word or act of the accused party at the time that evidence of such declarations by others is receivable at all. If this rule were more carefully observed on criminal trials, the appellate courts would be relieved of a frequent cause of embarrassment. The doctrine is by no means new. Judge Haight, writing for this court in People v. Kennedy, 164 N.·Y. 449, 457 [58 N. E. 652], expressly pointed out that statements made in the presence of a party are not received as evidence in themselves, but for the purpose of ascertaining the reply which the party to be affected makes to them. 'They are only competent when the person affected hears and fully comprehends the effect of the words spoken, and when he is at full liberty to make answer thereto, and then only under such circumstances as would justify the inference of assent or acquiescence as to the truth of the statement, by his remaining silent.'"

In People v. Smith, 172 N. Y. 210, 231–233, 64 N. E. 814, 820, the court said:

"The learned trial judge was obviously of the opinion that the presence of the defendant rendered proof of everything that occurred or did not occur absolutely admissible, without regard to its character, by whom it was said, done, or omitted, or to the circumstances or conditions under which the acts or omissions of the decedent or of the defendant occurred. In that we think he was in error. The practical effect of his rulings was to allow the prosecution to place before the jury the observed or imagined condition, appearance, movements, conduct, and demeanor of the decedent, from which to conjecture a mental condition of which there was not only no valid proof, but which, when proved, had no proper bearing upon the questions at issue. The possible and intended, if not the probable and natural, effect of that evidence was to induce the jury, notwithstanding her positive denial, to believe that the decedent was of the opinion that the defendant committed the offense of which he was charged. The issue was not what the decedent may have thought or believed, but whether the defendant committed the offense. This evidence was inadmissible, not only because it was an attempt to prove a mere unsubstantiated conjecture, as to a matter of which neither the witness nor the jury had any knowledge, but also for the reason that the decedent's belief was wholly incompetent and immaterial. That during the occurrences to which this evidence related the defendant made any actual admission, direct or indirect, of any fact material to the issue, cannot be even pretended. Nor did he perform any act that could be regarded as an admission of any such fact, unless his silence constituted such an admission. The only possible ground upon which the silence of a party can be admitted as evidence against him is that it amounts to an acquiescence in a statement or act of another person. The rule admitting such evidence is to be applied with careful discrimination. Such evidence is most dangerous, and should be received with great caution, and not admitted unless of statements or acts which naturally call for contradiction, or unless it consists of some assertion with respect to his rights in which, by silence, the party plainly acquiesces. To have that effect, his acquiescence must be exhibited by some act of voluntary demeanor or conduct. If the claimed acquiescence is in the conduct or language of another, it must plainly appear that such conduct or language was fully known and fully understood by the party before any inference can be drawn from his passiveness or silence. The circumstances must not only be such as to afford him an opportunity to act or speak, but such as would ordinarily and naturally call for some action or reply from persons similarly situated. If the condition be one of doubt as to whether a reply should have been made, the evidence should not be received. Declarations or acts made or performed in the presence of a party, when received in evidence, are received, not as evidence in themselves, but in a proper case and under proper circumstances and conditions they may be admitted to ascertain what the party to be affected said or did; but he is not to be prejudiced by the statements or acts of another in

his presence, although silent, unless the statements or acts are such as to call for some response or act upon his part. People v. Koerner, 154 N. Y. 355, 374 [48 N. E. 730]; Lanergan v. People, 39 N. Y. 39; Kelley v. People, 55 N. Y. 565, 572 [14 Am. Rep. 342]; People v. Willett, 92 N. Y. 29; Wright v. People, 1 N. Y. Cr. R. 462."

In People v. Conrow, 200 N. Y. 356, 367, 93 N. E. 943, 947, 948, the court said: .

"There are circumstances in which the declarations of persons made in the presence of an accused are competent, but they are regarded as dangerous, and should always be received with caution, and should not be admitted unless the evidence clearly brings them within the rule. Declarations or statements made in the presence of a party are not received as evidence in themselves, but for the purpose of ascertaining the reply the party to be affected makes to them. They are only competent when the person affected hears and fully comprehends the effect of the words spoken, and when he is at full liberty to make answer thereto, and then only under such circumstances as would justify the inference of assent or acquiescence as to the truth of the statement by his remaining silent. People v. Kennedy, 164 N. Y. 456 [58 N. E. 652]; People v. Smith, 172 N. Y. 210 [64 N. E. 814]; People v. Cascone, 185 N. Y. 317 [78 N. E. 287]."

In People v. Marendi (True Name Morena) 213 N. Y. 600, 107 N. E. 1058, decided by the Court of Appeals January 19, 1915, Judge Miller said:

"There is no pretense that O'Connell's act was in the nature of a dying declaration, and it requires no argument to show that it was a seriously prejudicial error to admit proof of that act, as an independent fact. Not being a dying declaration, it was admissible only in connection with some act, declaration, or response of the defendant in the nature of an admission. The defendant made a response in his own language, which no one present could interpret. Even if he had stood mute, his silence could not have been construed as an admission, because he was then under arrest, and not called upon to speak or deny an accusation. People v. Smith, 172 N. Y. 210, at page 234 [64 N. E. 814]; Commonwealth v. McDermott, 123 Mass. 440 [25 Am. Rep. 120]."

In view of the law upon this subject, I am of the opinion that the learned magistrate, in admitting the officer's testimony as to the declarations made by Pinkerton in the presence of these defendants, who were under arrest and who were not called upon to speak or deny the accusation, committed an error of a prejudicial character. This evidence bore directly upon the all-important issue as to the guilt of the defendants, and, since it must be disregarded, there is no competent evidence in the record to support the judgment of conviction.

The judgment of conviction as to each defendant is reversed, and a new trial granted.